UNITED STATES *v.* C. J. TOWER & SONS

**No. 5615.**—Invoices dated Montreal, Quebec, November 9, 1939, and December 6, 1939.

Entered at Buffalo, N. Y., November 13, 1939, and December 9, 1939.

Entry Nos. B-1853 and B-2339.

(Decided April 22, 1942)

*Paul P. Rao*, Assistant Attorney General (*Robert C. O'Grady*, special attorney), for the plaintiff.

No appearance for the defendants.

CLINE, Judge: These appeals for reappraisement, which were filed by the collector, were consolidated for trial. The merchandise involved consists of magnesite bricks, invoiced as "Burnt Dolomite Bricks, numbers 165–001, 165–002, 165–003 and 170–001." The merchandise was appraised at the invoice value.

When the case was called for trial, there was no appearance on the part of the defendants. The plaintiff called Mr. Arthur F. Caldwell who is a liquidator at the port of Buffalo. He testified that he was familiar with the cases involved; that the ultimate consignee was Basic Dolomite, Inc., of Cleveland, Ohio, and that he corresponded with the firm and received a letter from it stating that, as the amount

involved in the case was insignificant, no appearance would be made. The letter was admitted in evidence and marked exhibit 1.

The witness was asked what values he found to be the proper dutiable values, he said:

A. Well, may I go into a little detail here? In reality. the invoice shows two sets of figures—consular invoice with entry B1853, Reappraisement No. 136088–A; likewise with entry B2339, Reappraisement No. 136089–A. The first set of figures in each instance were stated in Canadian funds, and so entered. The merchandise was appraised as entered. The second set of figures on each invoice showed United States funds.

Now, to be specific, on entry B1853, Reappraisement No. 136088–A, the merchandise, namely, burnt dolomite brick, was entered at a value of $1562.88, Canadian funds. Using conversion factor as of the date of exportation, namely, November 13, 1939, the rate being .882968, equals in United States funds the total of $1378.97. The sum in United States funds shown on the consular invoice, namely, $1423.85 is $43.88 greater than the entered value when converted into same United States funds.

On entry B2339, Reappraisement 136089–A the merchandise, burnt dolomite brick, was entered in Canadian funds of $2387.87. Using the conversion factor .869140, as of the date of exportation, December 9, 1939, equals $2075.39, United States funds.

The United States funds shown in the second portion of the invoice, namely, $2173.84, is $98.45 greater than the entered value as converted into United States funds.

It is this greater sum in United States funds in both instances which the collector contends is the export value of the merchandise.

An examination of the invoice covered by reappraisement 136089–A shows that the invoice unit prices for the merchandise, in Canadian currency, are as follows:

No. 165–001 _____ $0. 70
165–002 _____ 0. 585
165–003 _____ 0. 455
170–001 _____ 0. 705

The total value of the merchandise on the invoice is. $2,387.87, to which is added consular fee of $2.80, the total value of the invoice being $2,390.67. Under this total appears the following:

Converted into U. S. Funds _____ $2,173.34
Exchange _____     .50
                                              _____
                                              $2,173.84

Entry was made at a total value of $2,387.87 in Canadian currency, the consular fee having been deducted, and that sum was converted into $2,075, United States currency, upon which value the duty was computed. The invoice covered by reappraisement 136088–A is similarly constructed.

The plaintiff introduced also several customs agent's reports which were received in evidence and marked collective exhibit 2. The first four reports relate to an investigation made at the importer's place of business. The only pertinent evidence contained therein is that an examination of the books and records of the importer shows that the firm paid to the exporter the sum in United States currency recorded on the invoices.

There is also contained in the exhibit a report of Treasury Representative T. G. Duncan (2–902), dated April 6, 1940, which appears to relate to an investigation of the particular shipments in this case. The Treasury representative reported that he visited the office of the Canada Refractories, Ltd., of Montreal, Canada, and interviewed Mr. J. M. Kilbourn, the Secretary-Treasurer of the exporting company. The following appears in the report:

Mr. Kilbourn stated that his company does not sell burnt Dolomite bricks to firms in the United States except the Basic Dolomite, Incorporated, Cleveland, Ohio, and the Mexico Refractories Company, Mexico, Missouri; that the Basic Dolomite, Incorporated bought the American business of the Canada Refractories under a stipulation that no sales would be made in the United States by Canada Refractories Limited unless the Basic Dolomite, Incorporated was unable to fill its orders through manufacture in its own plant, in which event Canada Refractories, Limited, would furnish Basic Dolomite, Incorporated, with such Burnt Dolomite Brick as might be required.

When the sale of the American business was consummated, the Canada Refractories reserved the right to sell to the Mexico Refractories Company, Mexico, Missouri.

Company records show that the last sale made in the United States of burnt dolomite brick by the Canada Refractories Limited was on March 28, 1939, to Basic Dolomite, Incorporated, Cleveland, Ohio, previous to the sales under consideration.

With respect to the commercial invoices issued for the two sales of burnt Dolomite Brick under consideration, copies of which were obtained from Basic Dolomite, Incorporated, Cleveland, Ohio, by Supervising Customs Agent, Detroit, Michigan, you are advised that these invoices were verified by the writer from company records.

It was stated by Mr. Kilbourn that the Canadian funds shown thereon were converted into U. S. funds under the controlled rate of exchange established by the Foreign Exchange Control Board of the Dominion of Canada of .9090, rather than at the Federal Exchange rate and that the conversion was made necessary due to the fact that payment for the invoices is required, under Foreign Exchange Control Board regulations, to be made in United States funds.

The exhibit contains also a report, dated April 12, 1939 (2–902), by Treasury Representative C. L. Orton, which relates principally to an investigation as to the values of Magnechrome and Magnecon fire brick and Magset cement. The particular shipments covered by that investigation were made on January 5 and January 9, 1939. The details of the invoices are copied in the report and we find that numbers 170–001, 165–002, and 165–003 appear on one of the invoices but the merchandise is described as "Magnechrome Kiln Liners" and

"Magnecon Kiln Liners." The shipments were made to Mexico Refractories Co. and to Basic Dolomite, Inc. There is nothing in the record tending to show whether or not Magnechrome Kiln Liners or Magnecon Kiln Liners is the same merchandise as burnt dolomite bricks, which are involved in this case. However, if it was shown that the merchandise in that shipment is the same as that herein involved, the shipments were too remote to be of any value in determining the value of the merchandise in these cases.

The report states also that the manufacturer had a price list for certain standard sizes but the price list did not cover the shipments and sizes exported to the United States. The following appears on page 3 of the report:

In order to introduce the use of the Magnechrome brick into the United States, and thus give an opportunity for ample tests, the price was reduced from what normally would be charged. Knowing that these prices would not furnish a satisfactory basis for the assessment of duties by customs authorities, but not realizing that they were acting contrary to the law, Canadian Refractories Limited has been invoicing the brick, not at the price that was actually charged, but at a price estimated to be in line with prices charged to Canadian customers.

The Treasury representative copied other invoices covering sales in the United States and in Canada in 1938 and up to February and March, 1939, but those invoices are not sufficient to establish the value of the articles herein involved which were exported on November 9 and December 6, 1939. The following appears on page 8 of the report:

While no sales of the "165" series have been made to Canadian purchasers since January 1, 1939, I am informed by Mr. Kilbourn that their prices would be as follows:

| | |
|---|---|
| #165–001 | $0. 605 each |
| #165–002 | . 505 each |
| #165–003 | . 39   each |

Thus far, all sales in Canada have been made to the Canada Cement Company Limited for its plants at various points in the Dominion. However, Canadian Refractories Limited stands ready and willing to sell to other Canadian customers at the same prices.

The prices noted above are lower than those in the invoices in the cases herein involved.

It is apparent from the testimony of Mr. Caldwell that the collector, who filed these appeals for reappraisement, claims that there is an export value for the goods and that the export value is higher than the foreign value upon which the merchandise was appraised. He bases his contention solely on the ground that the importer paid the exporter a higher price in United States currency than the unit prices of the invoices, which are the appraised values. The higher prices paid were apparently due to a method used in converting the currency

of the invoices into United States currency in accordance with rules of the Canada Foreign Exchange Control Board which set a fixed exchange rate for converting Canadian currency into United States currency. As the collector was required by the United States law to use a conversion rate in force in the United States on the day of exportation, the entered value in United States dollars was lower than the value in United States currency computed on the invoices.

I am of opinion that the conversion of currency is not a question to be raised on appraisement, citing *Giovanni Ascione* v. *United States,* 32 Treas. Dec. 725, T. D. 37252, G. A. 8077; *United States* v. *Sears, Roebuck & Co.,* 65 Treas. Dec. 1683, Reap. Dec. 3290, and 66 Treas. Dec. 1315, Reap. Dec. 3466. In the *Giovanni Ascione* case, *supra,* the court said:

Nothing could be plainer. The appraiser in arriving at the value has nothing to do with the conversion of money at any time or any part of the proceeding. He must find the value of the merchandise in the ordinary course of trade in the country of exportation in the currency used by the people of that country. No fine-spun theory as to depreciated currency is within his jurisdiction. There is another officer who will take care of that proposition.

The amount received by a foreign exporter is not the criterion for the determination of value. In *Ernesto Solari et al.* v. *United States,* 5 Cust. Ct. 449, Reap. Dec. 4943, the court said at page 456:

\* \* \* *In the first place, the statute does not provide that duty shall be assessed on the amount received by the foreign exporter for goods he ships to the United States. If such were the case there would be no application for the provisions of section 487 of the Tariff Act of 1930 permitting an importer, in making his entry, to deduct "from the cost or value given in the invoice as, in his opinion may* \* \* \* *lower the same to the value of such merchandise."* [Italics mine.]

In *Harry Garbey* v. *United States,* 24 C. C. P. A. (Customs) 48, T. D. 48332, the court said at page 52:

Appellant points out that the testimony of record supports the contention as to there not being what may be called a definite offering price for unique diamonds which may be taken as a freely offered price to all purchasers, because, it is said, transactions in such merchandise are the result of bargaining, the seller frequently asking more than he is willing to take and more than he expects to obtain. This may be true, but *we cannot agree that it follows, as a matter of law, that the price actually obtained must be taken as the dutiable value in all instances. That assuredly cannot be held to meet the statutory requirements.* [Italics mine.]

In *Mrs. G. P. Snow* v. *United States,* 24 C. C. P. A. (Customs) 319, T. D. 48767, the court said at page 321:

These drawings were entered and invoiced at $15 each. Two of them were appraised at $300 each, and the remaining four at $200 each. It appears from the record that this appraisement was predicated upon a statement made by the importer to the appraiser that the aforesaid amounts would be paid for the drawings by Harper's Bazaar. It is established by the record that there was no foreign, export, or United States value of the drawings, and that in order to appraise the

drawings the cost of production must be resorted to. While Judge Brown in his concurring opinion took the position that an export value of the drawings had been established by the record, and for that reason concurred in the conclusion reached by the majority, we are not in agreement with his view. *There is nothing in the record establishing that the price to be paid by Harper's Bazaar for the drawings accords with a free offering at that price to all purchasers in the principal markets in France for exportation to the United States.* See *United States* v. *Malhame & Co.*, 19 C. C. P. A. (Customs) 164, T. D. 45276. [Italics mine.]

The record shows that sales of merchandise like that herein involved to customers in the United States were limited to two importers— Basic Dolomite, Inc., the importer in this case, and Mexico Refractories, Inc., of Mexico, Mo. It has been held that where sales of a commodity are limited to agents in the United States, there is no export value which is defined in section 402 (c) of the Tariff Act of 1930 as the price at which such or similar merchandise is freely offered for sale in the usual wholesale quantities and in 'the ordinary course of trade for exportation to the United States. In *Universal Carloading & Distributing Co., Inc.* v. *United States*, 4 Cust. Ct. 827, Reap. Dec. 4894, the court said:

There was no export value for the reason that all sales for export, both to the United States and to other countries, were made to and through exclusive agents or agencies.

The record in this case has been carefully examined for the purpose of determining if there is any evidence tending to show the price at which such or similar merchandise was freely offered for sale at or near the time of the exportations in this case in the principal market of Canada in the usual wholesale quantity and in the ordinary course of trade, either for home consumption or for exportation to the United States and I find that no such evidence was introduced. It has been repeatedly held that, before the court can appraise merchandise, the appellant must establish all elements necessary for a valid appraisement. *Meadows, Wye & Co. (Inc.) et al.* v. *United States*, 17 C. C. P. A. (Customs) 36, T. D. 43324; *United States* v. *T. D. Downing Co.*, 20 C. C. P. A. (Customs) 251, T. D. 46057; *United States* v. *Malhame & Co.*, 19 C. C. P. A. (Customs) 164, T. D. 45276; *United States* v. *H. W. Robinson & Co.*, 69 Treas. Dec. 1427, Reap. Dec. 3817; *United States* v. *Spiritos Music School*, 2 Cust. Ct. 801, Reap. Dec. 4490; *United States* v. *Arkell Safety Bag Co.*, 2 Cust. Ct. 827, Reap. Dec. 4513.

The record contains no evidence showing the price at which such or similar merchandise was freely offered for sale at the time of exportation either for export or for home consumption, none showing the usual wholesale quantities in which the merchandise was bought and sold in the ordinary course of trade, and none showing the principal market of the country of exportation. In the absence of testimony establishing all the elements necessary to prove value in this case, I am

unable to reappraise the merchandise. Under such circumstances the appellate court has held that such appeals should be dismissed. Citing *Chas. A. Johnson & Co.* v. *United States*, 17 C. C. P. A. (Customs) 107, T. D. 43432. The appeals are therefore dismissed. Judgment will be entered accordingly.